# Supreme Court of Florida

---

No. SC19-1923

---

**LABORATORY CORPORATION OF AMERICA, et al.,**
Petitioners,

vs.

**PATTY DAVIS, etc., et al.,**
Respondents.

---

No. SC19-1936

---

**SHERIDAN RADIOLOGY SERVICES OF PINELLAS, INC., et al.,**
Petitioners,

vs.

**PATTY DAVIS, etc., et al.,**
Respondents.

May 26, 2022

PER CURIAM.

In this case we consider the interaction between the statutory remedy for prohibited consumer debt collection practices provided

by the Florida Consumer Collection Practices Act (FCCPA)[1] and the provision of the Workers' Compensation Law (WCL)[2] vesting the Department of Financial Services (DFS) with exclusive jurisdiction to decide matters concerning workers' compensation reimbursement.  Before the Court for review is the decision of the Second District Court of Appeal in *Davis v. Sheridan Healthcare, Inc.*, 281 So. 3d 1259 (Fla. 2d DCA 2019), in which the court held the WCL exclusive jurisdiction provision to be inapplicable as a bar to suit by an injured worker against a health care provider for prohibited debt collection practices.  *Id.* at 1261.  The Second District certified the following question to be of great public importance:

> DOES SECTION 440.13(11)(c) OF THE WORKERS'
> COMPENSATION LAW PRECLUDE CIRCUIT COURT
> JURISDICTION OVER CLAIMS UNDER SECTION
> 559.77(1) OF THE FLORIDA CONSUMER COLLECTION
> PRACTICES ACT?

*Id.* at 1267.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

---

1.  §§ 559.55-559.785, Fla. Stat. (2014).

2.  Ch. 440, Fla. Stat. (2014).

We answer the certified question in the negative and approve the result reached by the Second District.

**I**

Patty Davis was injured during the course of her employment. Subsequently, Davis utilized workers' compensation benefits to receive medical care for her work-related injuries. Davis received medical care from two providers: Sheridan Radiology Services of Pinellas, Inc., a subsidiary of Sheridan Healthcare, Inc. (Sheridan); and Laboratory Corporation of America and Laboratory Corporation of America Holdings (Labcorp). Thereafter, Sheridan and Labcorp repeatedly billed Davis directly for the medical care that she received.

Davis then filed two separate actions against Sheridan and Labcorp under section 559.77(1), Florida Statutes (2014), of the FCCPA. Davis argued that as an injured employee under the WCL—chapter 440, Florida Statutes (2014)—she was not to be billed for seeking medical care for her work-related injuries. Instead, according to Davis's claim, her employer's workers' compensation carrier, Commercial Risk Management, Inc. (CRM), was responsible for reimbursing Sheridan and Labcorp. In turn,

Davis maintained that Sheridan and Labcorp's attempts to collect the debt from her constituted an attempt to collect an illegitimate debt, violating section 559.72, Florida Statutes (2014), of the FCCPA.

In response, Sheridan and Labcorp asserted that the trial courts lacked subject matter jurisdiction for the alleged FCCPA violations. Under Sheridan and Labcorp's reasoning, section 440.13(11)(c) of the WCL unequivocally states that DFS "has exclusive jurisdiction to decide any matters concerning reimbursement." Consequently, Sheridan and Labcorp claimed, because their billing Davis was merely a "matter[] concerning reimbursement," exclusive jurisdiction over the matter was vested in DFS.

The trial courts agreed with Sheridan and Labcorp and dismissed Davis's FCCPA claims. Davis appealed. In its consolidated opinion, the Second District held that "the WCL does not preclude Davis's claims filed against her workers' compensation medical providers under section 559.77(1) of the FCCPA," reversed both trial court dismissals, and certified to this Court the question

of great public importance set forth above. *Davis*, 281 So. 3d at 1261, 1267.

## II

Section 559.72 of the FCCPA prohibits various debt collection practices. Subsection (9) provides that "no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Section 559.77 contains provisions authorizing and governing civil remedies for violations of the FCCPA. Subsection (1) provides that "[a] debtor may bring a civil action against a person violating the provisions of s. 559.72." Subsection (2) provides for the award of "actual damages and for additional statutory damages . . . not exceeding $1,000." Punitive damages and other equitable relief are also authorized.

Section 440.13 of the WCL establishes the framework for the provision of medical services to injured workers and for the reimbursement of medical providers by carriers and employers for those services. Subsection (3)(g) provides that "[t]he employee is not liable for payment for medical treatment or services provided

pursuant to this section except as otherwise provided in this section." In addition, subsection (13)(a) provides that "provider[s] may not collect or receive a fee from an injured employee within this state" unless otherwise provided and that "providers have recourse against the employer or carrier for payment for services rendered in accordance with [the WCL]."[3]

Subsection (11)(a) of section 440.13 grants DFS the power to "investigate health care providers to determine whether providers are complying with [the WCL] and with rules adopted by [DFS]," including "whether the providers are engaging in overutilization,

---

3. Under subsection (5)(a) of section 440.13, an employee "requesting and selecting [an] independent medical examination shall be responsible for all expenses associated with said examination, including, but not limited to, medically necessary diagnostic testing performed and physician or medical care provider fees for the evaluation," but "[i]f the employee prevails in a medical dispute as determined in an order by a judge of compensation claims or if benefits are paid or treatment provided after the employee has obtained an independent medical examination based upon the examiner's findings, the costs of such examination shall be paid by the employer or carrier." Subsection (5)(d) provides that an employee who without justification and proper notice fails to appear for an independent medical examination properly scheduled by a carrier or employer "shall reimburse the employer or carrier 50 percent of the physician's cancellation or no-show fee."

[and] whether providers are engaging in improper billing practices."[4] "If [DFS] finds that a health care provider has improperly billed, overutilized, or failed to comply with [DFS] rules or the requirements of [the WCL]" DFS "may determine that the health care provider may not receive payment from the carrier or may impose penalties as set forth [elsewhere in the WCL]." If a provider has received improper payments "from a carrier," the provider "must return those payments to the carrier." DFS is authorized to impose "a penalty not to exceed $500" for overpayments that are not timely refunded.

Subsection (11)(c)—which is the focus of the issue presented by this case—provides that DFS "has *exclusive jurisdiction to decide any matters concerning reimbursement*, to resolve any overutilization dispute under subsection (7), and to decide any question concerning overutilization under subsection (8)." (Emphasis

---

4. Undergirding the authority of DFS regarding providers is the provision of subsection (3)(f) of section 440.13 that "[b]y accepting payment under [the WCL] for treatment rendered to an injured employee, a health care provider consents to the jurisdiction of [DFS] as set forth in subsection (11)" and to the submission of records relevant to "a reimbursement dispute, audit, or review."

added.)  The first mentioned subsection provides for remedies against carriers that improperly deny reimbursement, and the second subsection provides penalties against providers that engage in overutilization.

Subsection (7) establishes the administrative process for resolving "utilization and reimbursement disputes" between carriers and providers.  Subsection (1)(q) defines "[r]eimbursement dispute" as "any disagreement between a health care provider or health care facility and carrier concerning payment for medical treatment."  Subsection (7)(d) provides that when DFS "finds an improper disallowance or improper adjustment of payment by an insurer, the insurer shall reimburse the health care provider, facility, insurer, or employer."  Provision is made in subsection (7)(f) for the imposition of various penalties on "[a]ny carrier that engages in a pattern or practice of arbitrarily or unreasonably disallowing or reducing payments to health care providers."  The authorized penalties are "[r]epayment of the appropriate amount to the . . . provider," administrative fines by DFS of up to $5,000 for each improper disallowance or reduction of payments, and the award of the provider's costs, including a reasonable attorney's fee.

Subsection (8) establishes the process for the determination by DFS that a provider has engaged in a pattern or practice of overutilization. Subsection (8)(b) enumerates penalties that may be imposed on a provider that "has engaged in a pattern or practice of overutilization or a violation of [the WCL] or rules adopted by [DFS]": "[a]n order barring the provider from payment;" "[d]eauthorization of care under review;" "[d]enial of payment for care rendered in the future;" "[a]n administrative fine of $5,000;" and "[n]otification of and review by the appropriate licensing authority" of licensed practitioners as provided by the WCL.

### III

According to the petitioner healthcare providers, the claim made by Davis under the FCCPA that the providers had improperly billed her—rather than the workers' compensation carrier—in violation of the WCL fell within the scope of section 440.13(11)(c)'s provision vesting "exclusive jurisdiction" in DFS "to decide any matters concerning reimbursement." The petitioners contend that the only basis for Davis's claim under the FCCPA was the WCL's "particularized reimbursement requirements," i.e., the general prohibition on charging injured workers.

- 9 -

The petitioners also assert that the use of the words "any" and "concerning" indicate that the exclusive jurisdiction provision is designed to sweep broadly. And they contend that there is "no third-party requirement inherent in the word 'reimburse.' " Accordingly, they argue that a direct payment from a patient to a provider is a reimbursement so that the term "reimbursement" is essentially synonymous with "payment."

Finally, the petitioners contend that the WCL's specific "self-contained system for dealing with covered workers' compensation issues" is not altered by the subsequently enacted generally applicable provisions of the FCCPA. In making this argument, they invoke the specific-controls-the-general canon and the presumption against implied repeals.

Respondent Davis's core argument is that the reference in section 440.13(11)(c) to "any matters concerning reimbursement" cannot be understood to include the matter at issue here, which arises from claims for payment by providers directly from a patient. Davis relies on the ordinary meaning of "reimbursement," which she asserts does not encompass a payment made directly from a patient

to a provider, as well as the manner in which the term is used in the WCL.

Invoking the whole-text canon and the consistent-usage canon, Davis points to the use of "reimbursement" and "reimburse" in numerous provisions of the WCL to designate a payment made by a carrier to a provider for services rendered to an injured worker. Davis also points to the absence of any provision of the WCL in which "reimbursement" or "reimburse" refers to "a payment sought by a provider from an employee, or a payment owed by an employee to a provider."

Finally, based on this reading of the statute, Davis argues that there is no conflict between the WCL and the FCCPA. In the absence of such conflict, Davis contends there is no need to resort to the canons relied on by the petitioners to resolve the conflict they assert exists.[5]

---

5. We decline to address other arguments that have been presented.

## IV

Answering the certified question requires us to determine the scope of the "exclusive jurisdiction" provision of section 440.13(11)(c). The standard of review for such issues of statutory interpretation is de novo. *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018).

In interpreting a statute, our task is to give effect to the words that the legislature has employed in the statutory text. "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). As it was long ago observed: "The words of a statute are to be taken in their natural and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense." James Kent, *Commentaries on American Law* 432 (1826), *quoted in* Scalia & Garner, *Reading Law* at 69 n.1. "[T]he goal of interpretation is to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the

- 12 -

language, would have understood the text at the time it was issued.'" *Ham*, 308 So. 3d at 947 (quoting Scalia & Garner, *Reading Law* at 33). Such a fair reading will always be mindful of the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). "Context is a primary determinant of meaning." Scalia & Garner, *Reading Law* at 167. Under the whole-text canon, proper interpretation requires consideration of "the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id.*

Here, we must determine the meaning of the phrase "exclusive jurisdiction to decide any matters concerning reimbursement." § 440.13(11)(c), Fla. Stat. We consider first the ordinary meaning of the verb "reimburse," from which the noun "reimbursement" is derived. We then look to the way "reimbursement" and "reimburse" are used in the WCL. We then determine how the scope of the "exclusive jurisdiction" provision is affected by the phrase "any matters concerning" as the final step in resolving the dispositive

question whether the matter at issue in this case is within the scope of "any matters concerning reimbursement."

*Reimburse* means "1. To repay (money spent); refund. 2. To pay back or compensate (another party) for money spent or losses incurred." *The American Heritage Dictionary of the English Language* 1522 (3d ed. 1992). This does not encompass a payment for services made by the recipient of services to the provider of those services. The ordinary meaning of the term thus is not consistent with the meaning urged by the petitioners. Contrary to the line of analysis advanced by the petitioners, "reimburse" is not a synonym for "pay." In common usage, all reimbursements are payments but not every payment is a reimbursement. Similarly, the fact that a provision of the WCL—section 440.13(13)(a), for example—refers to reimbursement using the term "payment" does not establish that reimbursement and payment are synonymous terms in the WCL. And there is no basis for concluding that any relevant "technical sense" of the term "reimburse" or "reimbursement" supports the petitioners' position on this point.

The use of "reimburse" and "reimbursement" throughout the WCL is similarly inconsistent with the meaning advanced by the

petitioners. And it is fully consistent with the meaning advanced by Davis. As is apparent from the foregoing review of the relevant provisions of the WCL, in the overwhelming number of instances when those words appear in the WCL, they refer to payment made by a carrier to a provider for services rendered to an injured worker. The definition of "reimbursement dispute" in section 440.13(1)(q) as "any disagreement between a health care *provider* or health care facility and *carrier* concerning payment for medical treatment" sets the stage for the usage of the terms "reimbursement" and "reimburse" throughout the section. (Emphasis added.) And not once do the terms "reimbursement" or "reimburse" refer to a payment made to a provider by a worker for services rendered to the worker. The position advanced by the petitioners thus runs up against the "presumption of consistent usage:" "A word or phrase is presumed to bear the same meaning throughout a text . . . ." Scalia & Garner, *Reading Law* at 170. No basis is apparent for defeating this presumption here. It is thus entirely implausible that the term "reimbursement" in the "exclusive jurisdiction" provision should be given a meaning different not only from its ordinary meaning but also from the meaning it has elsewhere in the WCL.

It would indeed be a very odd choice for the Legislature to use the term "reimbursement" in a sense in the exclusive jurisdiction provision different from the word's meaning throughout the WCL. If the Legislature had meant to say "payment," that term was readily available. Given the statutory context, it is unreasonable to conclude that the phrase "any matters concerning *reimbursement*" is equivalent to the phrase "any matters concerning *payment.*"

We also reject the petitioners' claim that the dispute here is within the scope of "any matters concerning reimbursement" even if the dispute is not a dispute over reimbursement. We have recognized that terms such as "concerning" frequently have a broad reach and should not be subjected to an unduly narrow interpretation. *See Ham,* 308 So. 3d at 948-50. But we have never suggested that terms such as "concerning" should be interpreted in the most expansive manner possible in every context. A "fair reading" of such terms to understand their proper reach will necessarily be sensitive to the full statutory context.

It is obvious that a direct connection exists between the dispute in this case and the WCL. Davis's claim is based on an alleged violation of specific provisions of the statutory scheme that

- 16 -

prohibit the billing of injured workers by providers. Absent those provisions of the WCL, Davis would have no claim. But that is a different issue than the question we must decide—whether the matter here is a "matter[] concerning reimbursement." The dispute here arises from alleged prohibited billing, which involves the relationship between the billing provider and the billed injured worker. This is distinct from reimbursement matters, which involve the relationship between the provider and the carrier. Given this context, we conclude that it is most reasonable to understand the "exclusive jurisdiction" provision as covering "any matters concerning" payments by a carrier to a provider but not applicable to the dissimilar matters that involve improper billing of a worker by a provider. In essence, the petitioners contend that the "exclusive jurisdiction" provision should be read to vest jurisdiction in DFS of all matters arising from a violation of the WCL concerning payments or charges for medical services, except matters subject to determination by a judge of compensation claims. The Legislature could have adopted such an expansive statutory provision, but it did not do so.

Given our interpretation of the scope of the "exclusive jurisdiction" provision, there is no need to address the arguments of the petitioners based on the presumption against implied repeals and the specific-controls-the-general canon.

**V**

We conclude that the matter at issue here under the FCCPA is not a "matter[] concerning reimbursement" subject to the exclusive jurisdiction of DFS. The jurisdiction of the circuit court is undisturbed by the provisions of the WCL. We therefore answer the certified question in the negative and approve the result reached by the Second District.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

Second District – Case Nos. 2D17-829 and 2D17-1790

(Hillsborough County)

James L. VanLandingham of Hogan Lovells US LLP, Miami, Florida, Catherine E. Stetson of Hogan Lovells US LLP, Washington, District

of Columbia, and Steven F. Barley of Hogan Lovells US LLP, Baltimore, Maryland,

>   for Petitioners Laboratory Corporation of America and Laboratory Corporation of America Holdings

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., West Palm Beach, Florida, on behalf of Sheridan Radiology Services of Pinellas, Inc. and Sheridan Healthcare, Inc; David S. Johnson and Scott W. Anderson of Johnson Daboll Anderson, PLLC, Tampa, Florida, on behalf of Sheridan Radiology Services of Pinellas, Inc; and Susan N. Eisenberg and Jennifer T. Williams of Cozen O'Connor, Miami, Florida, on behalf of Sheridan Healthcare, Inc,

>   for Petitioners Sheridan Radiology Services of Pinellas, Inc. and Sheridan Healthcare, Inc.

Kristin A. Norse and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa, Florida; Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida; and Christa L. Collins of Collins Law PL, Saint Petersburg, Florida,

>   for Respondents

Paul Michael Anderson of Anderson & Hart, P.A., Tallahassee, Florida,

>   for Amici Curiae Workers' Compensation Section of The Florida Bar and Florida Workers' Advocates